UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| NORMA JEAN PETERSON, )<br>)<br>Plaintiff )<br>)<br>v )<br>)<br>APOSTOLIC CHRISTIAN HOME )<br>OF ROANOKE, INC., )<br>)<br>Defendant ) | CASE NO: 1:11-CV-1212 |

**ORDER**

Plaintiff, Norma Jean Peterson, ("Peterson") filed a complaint against the Apostolic Christian Home of Roanoke, Inc., ("Home") alleging retaliation for filing a claim of age discrimination. Summary judgment was denied, and the matter proceeded to trial. The jury found in favor of Peterson and awarded $56,000 in emotional distress damages. The Court requested briefing on the remaining damages issues, and the Home filed a Motion for Judgment as a Matter of Law or in the Alternative for a New Trial or Remittitur. Peterson has responded, and this Order follows.

Rule 50 of the Federal Rules of Civil Procedure allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." In deciding a motion for judgment as a matter of law, the Court construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine

1

whether the jury's verdict could reasonably be based on that evidence.  Tart v. Illinois Power Co., 366 F.3d 461, 464 (7th Cir.2004), *citing* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150–51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The Court does not make credibility determinations or weigh the evidence. Waite v. Board of Trustees of Illinois Comm. College Dist. No. 508, 408 F.3d 339, 343 (7th Cir.2005). The Court must also "disregard all evidence favorable to the moving party that the jury [was] not required to believe." Reeves, 530 U.S. at 151, 120 S.Ct. 2097.

The Home argues that Peterson failed to present a convincing mosaic of circumstantial evidence to support her claim of retaliation.  Taking the record as a whole, the Court must determine "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed."  Whitehead v. Bond, 680 F.3d 919, 925 (7th Cir. 2012).

The trial in this matter essentially boiled down to a credibility contest between Peterson on the one hand and Isaia and Grafelman on the other.  None of the evidence presented was so incredible that it could be disregarded, and there was sufficient evidence upon which to support the jury's verdict.  Isaia testified that Peterson's performance had nothing to do with the termination of her employment, while Grafelman repeatedly criticized Peterson's performance. Isais was a credible witness and the trial might have had a different outcome if based solely on his testimony.  However, the same cannot be said for Grafelman.  The negativity and criticism she displayed on the stand must be considered in combination with Peterson's testimony that shortly after she settled her ADEA charge that Grafelman told her, "No matter what you do, your [sic] not getting your way.  If you don't like it, why don't you try hiring into another department

2

or maybe you can get a job as a greeter at Wal-Mart." It would have been reasonable for a jury to conclude that Grafelman was not happy that her reduction in Peterson's hours had been overruled and that she acted with vindictive and retaliatory animus in recommending the final scheduling change to Isaia. It would also have been reasonable for the jury to have found that Grafelman's influence colored the ultimate decision that Isaia made leading to Peterson's termination. The verdict confirms that the jury chose to credit Peterson's testimony over Grafelman's, and the Court cannot find this determination to have been unreasonable. "When a jury has chosen to credit crucial testimony with full knowledge of the many faults of the witness providing it, we have no basis to interfere, as the jury is the final arbiter on such questions." Id., at 927. The Home's Motion for Judgment as a Matter of Law is therefore denied.

The Home next requests a new trial. Rule 59 provides, in relevant part:

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action where there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . .

Fed.R.Civ.P. 59(a). A trial court may grant a motion for new trial where "the clear weight of the evidence is against the jury verdict, the damages are excessive or for some other reason the trial was not fair to the moving party." Scaggs v. Consolidated Rail Corp., 6 F.3d 1290, 1293 (7th Cir. 1993), citing Walden v. Illinois Central Gulf R.R., 975 F.2d 361, 365 (7th Cir. 1992). Additionally, a court may grant a motion for a new trial for judicial error in the admission or exclusion of evidence, jury instructions, or party misconduct. See 6A MOORE'S FEDERAL PRACTICE, ¶ 59.08[1] (2d ed. 1995).

The Home makes no separate argument in support of this request as to liability, and the Court therefore assumes that the Home is advancing the same grounds as offered in support of

3

the Motion for Judgment as a Matter of Law. For the same reasons as set forth above in addressing that motion, the Motion for a New Trial as to liability is also denied.

The third portion of this Motion seeks a new trial as to damages and/or a remittitur based on the argument that Peterson failed to mitigate her damages. Specifically, the Home contends that Peterson failed to mitigate her damages by selecting one of the two alternate schedules that she was offered to avoid termination, or by attempting to find employment at one of the five other nursing homes within a 20 mile radius of her home. As a result, the Home asks that the Court vacate the jury's damages award and decline to award back pay or front pay. Peterson responds that she should not have been forced to pick between a schedule that forced her to give up her accommodation and a schedule that forced her to cut her hours in order to remain employed; nor could she have sought other employment because she was incapacitated by depression following the loss of her job on April 4, 2009, through the date that her counseling was completed in June 2011.

A prevailing plaintiff must mitigate her damages by exercising "reasonable diligence" in finding new employment. Gaffney v. Riverboat Services of Indiana, 451 F.3d 424, 460 (7th Cir. 2006). This is an affirmative defense that must be proven by the defendant in order to rebut the plaintiff's claim for back pay damages. Id. In order to prove this defense, defendants must establish that : (1) Peterson failed to exercise reasonable diligence to mitigate her damages; and (2) there was a reasonable likelihood that Peterson would have found comparable work by exercising such diligence. Hutchison v. Amateur Electronic Supply, Inc., 42 F.3d 1037, 1044 (7th Cir. 1994).

The record indicates that despite her depression, Peterson continued to work during the week as the playground monitor at the Benson Grade School and cleaned the church two-three

days per week.  The record also establishes that she did not begin seeing her counselor until September 17, 2010, nearly a year and a half after her termination. While one of the alternative schedules offered by the Home would have required her to quit her job at the school, the second schedule would have reduced her hours but allowed Peterson to continue serving as playground monitor.  That being said, the jury clearly accepted Peterson's claim to have suffered from severe depression following her termination, as it awarded her substantial emotional distress damages.  Moreover, Peterson was 70 years old.  She testified that she knew of no employer in the area who would hire someone of her age for a similar housekeeping job, and the Home offered nothing to rebut that testimony.  Comparable employment has been defined as a position that affords the employee "virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status" as the prior position. Lalowski v. Corinthian Schools, Inc., 2013 WL 1788353, at *5 (N.D.Ill. April 26, 2013).  This would presumably include the extended lunch hour to accommodate Peterson's playground monitor job, which would further lessen the likelihood of her obtaining comparable work.  Accordingly, the Court concludes that the Home has failed to meet its burden of demonstrating a failure to mitigate that would support vacating the jury's mental distress damages award.

     Alternatively, the Home requests a remittitur of the jury's $56,000 in mental distress damages.  Given the lack of any physical injury and the delay in obtaining mental health treatment discussed above, the Home suggests a reduction of the award to less than $10,000.  Peterson responds that deference must be given to the jury's verdict on damages, and that the verdict was supported by her testimony, as well as the testimony of her husband.

     The standard for granting a remittitur is a three-part inquiry: (1) is the award monstrously excessive; (2) is there no rational connection between the award and the evidence, indicating that

5

it is merely a product of the jury's fevered imaginings or personal vendettas; and (3) is the award roughly comparable to awards made in similar cases. Farfaras v. Citizens Bank and Trust of Chicago, 433 F.3d 558, 566 (7th Cir. 2006). There was no psychological or medical testimony presented by an expert in this case. However, the jury heard the testimony of Peterson and her husband regarding the physical and emotional distress she endured as a result of her termination and was capable of evaluating the impact of the Home's actions on Peterson. Peterson also admitted that during this time, there was marital discord in her family and that she was upset by a grandson who had trouble with the law. As mental distress damages were the only type of damages before the jury, the jury necessarily determined that Peterson suffered from depression that prevented her from obtaining other work at least through the time she completed her treatment in December 2011 and that this depression was primarily due to the actions of the Home. The Home has also failed to point to any evidence indicating that the award was a product of the jury's fevered imaginings or personal vendetta. While the Court may have reached a different conclusion if confronted with this issue in the first instance, the Court cannot conclude that the award was monstrously excessive or lacking any rational connection to the evidence, as required to warrant a remittitur.

The Home also asks the Court to exercise its discretion to decline to award liquidated damages, citing Heiar v. Crawford County, Wisconsin, 746 F.2d 1190, 1202 (7th Cir. 1984), which suggested that under the ADEA, a plaintiff who proved a willful violation may not automatically get double damages if the employer acted in good faith. However, in 1985, the Supreme Court clarified the meanings of willfulness and the good faith exception in Trans World Airlines, Inc. v. Thurston, 469 U.S. 111 (1985). Following Thurston, "'good faith' can no longer coexist with 'willfulness.'" Powell v. Rockwell International Corporation, 788 F.2d 279,

287 (5th Cir. 1986). The result is that the vast majority of courts now conclude that liquidated damages are mandatory upon a finding of willfulness without expressly saying so. Id.; Bruno v. Western Elec. Co., 829 F.2d 957, 967 (10th Cir. 1987); Lindsey v. American Cast Iron Pipe Co., 810 F.2d 1094, 1101 (11th Cir. 1987).

This is consistent with the Seventh Circuit's discussion in Burger v. International Union of Elevator Constructors Local No. 2, 498 F.3d 750, 752 (7th Cir. 2007). The Court of Appeals cited to § 626(b) of the statute, "[L]iquidated damages shall be payable only in cases of willful violations of this chapter," before going on to note that in cases of alleged retaliation under the ADEA, a finding of "retaliation is inconsistent with a finding of non-willful discrimination." Id., *citing* Rose v. Hearst Magazines Div., The Hearst Corp., 814 F.2d 491, 493 (7th Cir 1987). The Seventh Circuit concluded that "because the jury found in favor of [the plaintiff] on the retaliation count, the total back wages will be subject to doubling . . . under 29 U.S.C. § 626(b) as liquidated damages for willful discrimination." Burger, 498 F.3d at 755. The Court therefore rejects the Home's argument that an award of liquidated damages is discretionary where there has been a finding of retaliation.

This brings us to the ultimate calculation of damages. The above rulings result in the jury's $56,000 mental distress damages award standing. Peterson also seeks an award of back pay, liquidated damages, and front pay.

Peterson requests a back pay award of $50,290.42 to compensate her for the wages that she did not receive between April 4, 2009 and December 31, 2011, as well as an additional $27,021.72 in back pay for the period from January 1, 2012 to June 30, 2013. Other than general objections to any award of damages and its failure to mitigate defense, the Home has not made specific objections to Peterson's damages calculations.

Back pay is awarded as compensation for wages that would have been earned by a Plaintiff had he or she not been wrongfully dismissed. Given the jury's finding of liability and the prior rulings contained in this Order, the Court concludes that Peterson is entitled to $50,290.42 in back pay to compensate her for wages she would have earned from the time of her discharge through the date on which she recovered from her depression and would have been able to seek other employment. From January 1, 2012 through June 30, 2013, Peterson admits that she had a duty to mitigate her damages, yet fails to introduce any evidence of any effort on her part to obtain other employment. Her attorney's argument as to why this may not have been practical is insufficient to entitle her to an equitable award of back pay for this time period. Accordingly, the Court declines to award the additional $27,021.72 and awards only $50,290.42 as back pay.

Liquidated damages under the ADEA are to equal the amount of back pay awarded. Graefenhain v. Pabst Brewing Co., 870 F.2d 1198, 1210 (7th Cir. 1989). Having concluded that Peterson is entitled to liquidated damages, the Court adds another $50,290.42 to the back pay award as liquidated damages, bringing this portion of her damages award to $100,580.84.

Front pay is an equitable remedy that "compensates an unlawfully discharged employee for the loss of earnings that he sustains as a result of the discharge." Mattenson v. Baxter Healthcare Corp., 438 F.3d 763, 771 (7th Cir. 2006). It has been defined as, "a lump sum . . . representing the discounted present value of the difference between the earnings [an employee] would have received in his old employment and the earnings he can be expected to receive in his present and future, and by hypothesis inferior, employment." Downes v. Volkswagen of America, Inc., 41 F.3d 1132, 1141 (7th Cir. 1994). In determining whether to award front pay, the Court must consider factors such as the "reasonable prospect of obtaining comparable

<s>employment, whether the time period for the award is relatively short, whether the plaintiff intended to work or was physically capable of working and whether liquidated damages have been awarded." Id.</s>

<s>Here, Peterson seeks a front pay award of $45,036.20 to compensate her for wages that she would have received from the time of trial through her anticipated retirement date in December 2015. The Court finds the record in support of this award to be speculative. Peterson is now 72 years old, and there is no evidence indicating that she has ever tried to work another full-time housekeeping job or any comparable type of employment since her termination. The Court acknowledges that given her age and limitations, the job market may not offer many positions for someone in Peterson's position, but no decision can be premised on this regarding an entitlement to future money damages given the lack of evidence presented in this regard. Following her testimony at trial that she was better after receiving treatment for her depression and fit to work, she cannot simply sit back and wait for an equitable front pay award to compensate her until she says she would have retired. Mattenson, 438 F.3d at 771 (noting that a plaintiff has a duty to mitigate future damages and must present persuasive evidence of an inability to find a substitute job in order to recover front pay.) Additionally, the most compelling factor in this case is that the Court has already awarded liquidated damages in the amount of $50,290.42. This is a substantial award which the Court finds sufficient to make Peterson whole in this matter without any award of front pay. Hybert v. Hearst Corp., 900 F.2d 1050, 1056 (7th Cir. 1990); McNeil v. Economics Laboratory, Inc., 800 F.2d 111, 118 (7th Cir. 1986); Graefenhain v. Pabst Brewing Co., 870 F.2d 1198, 1205 (7th Cir. 1989).</s>

employment, whether the time period for the award is relatively short, whether the plaintiff intended to work or was physically capable of working and whether liquidated damages have been awarded."  Id.

Here, Peterson seeks a front pay award of $45,036.20 to compensate her for wages that she would have received from the time of trial through her anticipated retirement date in December 2015.  The Court finds the record in support of this award to be speculative.  Peterson is now 72 years old, and there is no evidence indicating that she has ever tried to work another full-time housekeeping job or any comparable type of employment since her termination.  The Court acknowledges that given her age and limitations, the job market may not offer many positions for someone in Peterson's position, but no decision can be premised on this regarding an entitlement to future money damages given the lack of evidence presented in this regard.  Following her testimony at trial that she was better after receiving treatment for her depression and fit to work, she cannot simply sit back and wait for an equitable front pay award to compensate her until she says she would have retired.  Mattenson, 438 F.3d at 771 (noting that a plaintiff has a duty to mitigate future damages and must present persuasive evidence of an inability to find a substitute job in order to recover front pay.)  Additionally, the most compelling factor in this case is that the Court has already awarded liquidated damages in the amount of $50,290.42.  This is a substantial award which the Court finds sufficient to make Peterson whole in this matter without any award of front pay.  Hybert v. Hearst Corp., 900 F.2d 1050, 1056 (7th Cir. 1990); McNeil v. Economics Laboratory, Inc., 800 F.2d 111, 118 (7th Cir. 1986); Graefenhain v. Pabst Brewing Co., 870 F.2d 1198, 1205 (7th Cir. 1989).

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Judgment as a Matter of Law or, In the Alternative, for a New Trial or Remittitur [39] is DENIED. The Court upholds the jury's mental distress damages award of $56,000 in favor of Plaintiff and further awards Plaintiff $50,290.42 in back pay, and an additional $50,290.42 as liquidated damages, for a total damages award of $156,580.84.

ENTERED this 24th day of October, 2013.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge